May it please the Court, I'm Jim Miller representing Ms. Zamora who applied for Social Security Disability Benefits. And because I work these kinds of cases and I've seen you in these situations before and I've seen your names on cases before, I know that you understand Social Security law and you'll understand when I say that the three issues presented here are not unusual and the arguments are not unusual either, I believe. The basic agreed-upon facts is that this woman had a work-related back injury, stopped working, had back fusion surgery in 2003, did not ever return to her job as a cashier at Costco, and the ALJ did find in conformance to that she could not have returned to her job. And then, as you know, the case was decided at the fifth step of the sequential evaluation process where the ALJ found she could do other work. So, you know, I understand all of your arguments, but there's one sort of new issue that's raised in this case. She didn't go to the ‑‑ when she was requested by the Social Security Administration to attend two consultative examinations, she didn't go. That's correct, yes. Her non-lawyer representative, when she inquired of him whether she should go, advised her not, said that she didn't have to go. He didn't advise her not to go. He said, you don't have to go. Correct, yes. So she didn't go. Correct. Instead, he arranged for her to have an exam at his office by, I guess it was a psychologist or a psychiatrist? Psychiatrist. At his office. Right. And she showed up for that. That Dr. Zalman? Dr. Kalman. Kalman or whatever his name was. Did a report and ultimately submitted for consideration. Yes. So at the hearing, the judge asks her about this at the hearing, and she says that she didn't go because, one, her representative said she didn't have to go, and, two, she was unhappy with prior experiences with these consultative exams, and she didn't like new doctors, I think. Maybe there was another reason, but those were the three. Yes. So in the ALJ's decision, he essentially discredits her testimony for not cooperating. Yes. What's wrong with that? Well, one thing that's wrong with that is the ALJ. Doesn't a claimant have an obligation to cooperate? Yes. The claimant does have an obligation to cooperate. And here the ALJ did use that non-cooperation against her, not to deny her on the grounds, but to make that go to her credibility. He drew adverse inference, basically, is what he did. Right. Yes. But the ALJ found, at excerpts of Record 19, quote, the representative did not follow the appropriate process. And to the extent that the ALJ counted it against the claimant's credibility that the representative advised or declined to follow the usual process, I think that's unfair. The representative's advice was conditioned upon his understanding of the law and her understanding of what the law about that and her necessary cooperation was based on the representative's indication. She knew that he was not a lawyer, correct? Apparently she did, yes. Is there any dispute about that? No, no. So the problem with the other opinion that came in, this consultative examination that was not attended, was a mental examination. And the representative provided a mental examination by another doctor, Dr. Coleman, who was a psychiatrist. And apparently the ALJ here decided that his opinion was not going to be given very much importance. It was dealt with, but was called a purported psychological assessment, quote, by the ALJ. And I think that shows how the ALJ failed to give weight to an actual psychiatric assessment by a specialist in the area, and the ALJ failed to understand that the psychiatrist had talked about a need for rest periods and a need to accommodate her lack of ability to concentrate fully. So on the other hand, the ALJ did not find that the lack of attendance at the examination was a reason to deny her. The government does bring this argument up in their brief, but that was not a purported reason for denial here. May I answer any other questions about that particular issue? Well, on the face of it, a failure to go and go to evaluation which had been arranged seems to suggest that she was fearful of what the result might be, that she's unwilling to cooperate. Maybe she should have just gone. Why didn't she go? Well, she expressed several different reasons, including the one that her representative had advised her, and also that she had moved and there were some other constraints on her ability to schedule it. But I guess if I were the ALJ, I would be concerned about that. There was another factor here. This doctor for the arranged examination that had apparently was the same doctor whose opinion is in the record at 176 at SEC, of the excerpts of record, he did an earlier mental exam on her. And I think part of the objection was why is another exam necessary when we do have a mental exam, a consultative exam, and we have an examination by not the treating physician, but from the applicant's side as well. And I can't stand up for the representative's advice here, but I would like to stand up for the claimant's reliance on the representative's indication that she didn't need to or that it would be better if she didn't or her understanding of it, that it would be, the case could be made without doing that. Did the ALJ find that she was not malingering? No, he did not make a finding that she was not malingering. Well, the questionnaire by Dr. I forget what his name was, she was not a malingerer. Right, that was her treating doctor, Dr. Turan, who said that, and that was not considered in the credibility evaluation, even though that's from a highly preferred source. And I think that Dr. Turan opinion is the first issue that the claimant has brought up. It's the best issue. It's an opinion that was not even acknowledged or addressed by the ALJ here. And so that's basic fundamental error. The government argues that it is basic fundamental error that was harmless. And I can see how that could possibly be considered, but not in this case, where that doctor's opinion included opinions that she could lift 20 pounds only rarely and that she needed unscheduled breaks. Those two elements were contrary to the finding made. And, by the way, at a lower level, District Court Judge Jeffrey S. White found that the ALJ was okay to not address or even acknowledge his opinion because he didn't really reject it. In fact, he incorporated the limitations in that opinion. But that's not correct, either, because, as I said, those two limitations, needing unscheduled breaks and not being able to lift 20 pounds occasionally, meant that the entire opinion was not brought into the RFC functionality findings of the ALJ. If I can answer any other questions, I'd be glad to. And reason to review, I have about six minutes. Thank you. Yes. Good morning, Your Honors. My name is Elizabeth Freer. I represent Michael Astrew, the Commissioner of Social Security in this case. And if the Court will allow me, I'd just like to give an overview, outline of what happened with this claimant's injury. She was injured at work in December 2001. She applied for benefits and was denied in 2001. She filed another set of applications in 2005, which ended up being consolidated with the applications she eventually filed in 2006 that are at issue here. There's a lot of worker's comp evidence in the record that predates her latest onset date, which is November 25, 2005. By switching her onset date to that later point and refusing to go to our consultative examinations, she's essentially attempting to rely on evidence that she's handpicked and that wasn't objectively obtained. Is it correct that one of the doctors that she was asked to go to had examined her before and had filed a report? I think I was a little confused by my opponent's statement of that. I think what he was talking about is that there is a prior consultative examination in the record, which was done by a Dr. Punea, and that was in, I believe, May 2005. And the claimant complained about that particular examination, and that was one of the reasons she gave for not attending. It's a rather straightforward answer that I'm requesting. Was it the same doctor? I don't think so. No, no, definitely not. Oh, oh, the scheduled CE. I can't tell from the record. There's a history in the record about from the, it's, I know page 232 in the excerpts of the record contains some of it, but I couldn't tell who the scheduled CE was, so I'm not sure about that. But the reasons the claimant gave for failing to cooperate in this case, you can't just blame them on her representative. She made several different statements. I was working. I was, or I was moving. You know, I didn't, I was afraid of doctors. And that in particular is not supported anywhere in the record. There's no treatment. She went to lots of workers' comp doctors and never said she was afraid to attend them. So it is definitely a reasonable inference that she didn't want to go to our CEs because she didn't want an objective account of her condition. Now, there's nothing in the regulations that says that failure to cooperate will result in a negative inference regarding your credibility. It says we can deny your claim based on that. That's 1518. Well, there's CFR 416.916, which says when you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case. Well, that could, I mean, information available in your case includes your reasons alleged for not going. There's, whatever's in the record is fair game for the ALJ to make inferences from. When you fail to cooperate with us in obtaining evidence, we will have to make a decision based on information available in your case, meaning the record as it is. Just as you said, she's stuck with the prior. What's already in the record. What's already in the record. She doesn't have the advantage of having the consultative determination. But she did. I mean, the doctor who she handpicked, his findings are in the record. The ALJ did consider them. So regardless of whether or not she cooperated, that evidence was considered. And Dr. Coleman's opinion is if you compare his narrative report with the functional form assessment he filled out, which was created by claimants' representatives, not by the agency, his narrative report on page, specifically on page 257, he makes findings stating that she is able to relate to supervisors and coworkers, is able to deal with the public, is able to do simple ones, do two-step job instructions. And then she has a decreased ability to maintain attention and concentration and to withstand the stress and pressures associated with daily work activities to a limited extent. Those are consistent with an RFC for simple repetitive tasks with limited public contact. It's later when he gets to the checkmark form that he makes findings that are inconsistent with that. But it's the ALJ's job to resolve ambiguities in the record. We don't think it's unfair, as the district court said, that the ALJ took Coleman's findings overall and believed they were consistent with the functional capacity assessment he assessed. It's true he did not address Dr. Teran's functional form, but we submit that is a harmless error. This Court's harmless error standard is that there's no reasonable chance if the ALJ had addressed the evidence it would have changed the outcome of this decision. Dr. Teran's checkmark opinion is the kind of opinions ALJs reject all the time. It's unsupported by any objective findings, any clinical findings. The only thing she specifically says she based her limitations on is the surgery that Coleman had and that she has complaints of a mood disorder with a physical exam. Well, the doctors who assessed her work injury and her surgery pretty clearly stated that that history is very clear that this surgery was successful. This claimant has never had any objective neurological deficits even before the surgery. The surgery, by all accounts, was stable and successful. She even reported to a workers' comp doc, Dr. Eister, in February 2005, that it was 40% successful. Those findings all support the ALJ's functional assessment for light work. Dr. Teran's findings are not exactly consistent with light work, but they're certainly not significantly inconsistent with it. And we have just to reiterate that the functional capacity of the ALJ assessed is for light work with simple repetitive limitations and then limitations to public content. That's all supported by Dr. Hunstock, the primary workers' comp doctor, Dr. Eister, Dr. Carmody, who's an insurance provider who assessed the workers' comp history at one point when they were trying to give her more pool therapy, and he said that there are, and the ALJ addressed this, there are no neurocompressive symptoms in the record to support that. Nothing changed between the time she finished her workers' comp and she was found permanent and stationary, ready to go back to a light job with no prolonged sitting and standing, which is accommodated with the sit-stand option the ALJ assessed. Nothing's changed except for her subjective complaints. She just, once she was in vocational rehabilitation, she decided she didn't want to go back to work. And that's not, doesn't satisfy the standard under the Social Security Act. But she certainly, following her surgery, had some mental problems that have to be factored in, I think. And people who have suffered from chronic pain have a lot of things to overcome, I think. And if we were to set aside her, quote, failure to cooperate and just look at the record, do we come to the same result? I believe so. As I said, if you look at objectively, yes, there were doctors who subjectively, and in workers' comp reports it's very clear what is subjective and what is objective, and that's set forth in Dr. Eister's report. Objectively, she has no neurological deficits. Objectively, the workers' comp doctor said she could go back to light work without, prohibited heavy work and prolonged sitting and standing. Those are supported. There's sometimes a fright factor that you are afraid to do certain things because of concern that you may reenter yourself. That could certainly be true, but that's not, this claimant was never, never underwent psychological treatment. She was referred to a pain management center once, there's one record in there from Dr. Tran, but she certainly didn't pursue any significant psychological treatment, and the workers' comp doctors didn't refer her to a psychological evaluation either. So if you take away the non-cooperation, there's more than enough substantial evidence in this record to support the functional assessments the ALJ did assess. I wonder if you could give a couple of examples, concrete examples of the kind of jobs she could perform. The vocational expert identified two specific jobs, two that are both assembly jobs. Where are they? They are small product assembly two and production assembly, and she identified 3,000 and 5,000 respectively in the regional economy. These would be jobs at a big factory? Honestly, I don't know specifically what the jobs would be. The vocational experts I trusted. Those are with sit-stand options? Yes. Which, you know, satisfies her prohibition from prolonged sitting or standing. And wasn't it also that she had to have two short interrupted breaks? The unscheduled breaks, that's, none of the workers' comp doctors ever assessed that. That was completely unsupported. Dr. Turan assessed that, and she's, just to remind the Court that she's relying on the workers' comp evidence. It's not in there anywhere. And Dr. Turan also made this indication that the claimant would have to every 30 minutes walk around for three minutes. That's not in any of the specific workers' comp treatment history that's very detailed, nor did claimant ever say she had to do that. It's not in her testimony. So that's another reason why Dr. Turan's opinion is so unprobative and why it's not, why it is a harmless error that the ALG didn't specifically address it. And one last thing is the ALG did say at the beginning of his decision that he was, he did look at all the evidence, he just addressed the most important evidence. So if you do not have any more questions? No, thank you. Just to address a few points. You asked about whether the recommendation to send this claimant to a mental examination involved the same doctor that she had gone to before, who had a report already in the record. This is sort of hard to determine, but in the decision at excerpts of record 018, the ALG says, in referring to Exhibit 1F, the exhibit from Dr. Panin, he says, quote, this is the evaluation to which claimant objective, unquote. So we're talking about the same doctor here, apparently. I don't know what the ALG actually based that on. I don't know if there's anything in the record that would prove that. But she testified that she was just unhappy with her prior consultative examinations, that they only spent nine minutes with her, some words to that effect. Right. So she may have objected to his examination as it was and may have objected to going to him again. Or any other consultative exam. Well, we don't know to whom he was sent, except that this inference possibly read into this finding that Dr. Panin was the same one that she objected to. So there's that, at least. Now, the government is claiming that harmless error should be the rule to be applied in regard to the main opinion, Dr. Tran's opinion here. The Ninth Circuit has put the harmless error rule out pretty clear recently. And it's similar to a summary judgment type rule, where you, given all the credit that would favor one side of the case, would that allow a dismissal or a win, just based on that. And here, if you credited all the limitations in Dr. Tran's opinion, you would find that this person would need unscheduled breaks and could not go to court. She could not concentrate. So using that standard, I think you could not find harmless error from failure to acknowledge that opinion. Let me ask you, if you were to credit her testimony, would it make a difference in the outcome? Even if you just leave the record as it is with respect to the... Yes, I believe it would. Because she testified about pain and back pain that affected her ability to concentrate and her ability to do light work and walk and sit and stand. I think that's a given, almost. One last thing, I'm sorry, the government claims the decision is supported by enough evidence to call that substantial evidence. I would just like to point out that that's by selecting evidence. The review here is based on evidence in the record as a whole, as opposed to selected evidence. Thank you very much. Thank you, counsel.
judges: Fletcher, Noonan, Paez